A. B. COLE, RESIDENT AND TAXPAYER OF THE CITY OF ASHEVILLE, ON BEHALF
OF HIMSELF AND OTHER TAXPAYERS OF THE CITY OF ASHEVILLE v. THE
CITY OF ASHEVILLE, NORTH CAROLINA, A MUNICIPAL CORPORATION

No. 6828SC400

(Filed 23 October 1968)

**Municipal Corporations § 39;    Taxation § 6—    necessary expense —
public bus system**

    The expense of operating a public bus system is not a "necessary ex-
pense" within the meaning of Article VII, § 6 of the Constitution of North
Carolina; therefore, a municipality may not pledge its credit or expend
tax revenues to support the operation of a public bus system without
obtaining the approval of the electorate.

APPEAL by defendant from *Martin, J.,* at the 27 June 1968 Ses-
sion of BUNCOMBE Superior Court.

In this action, the plaintiff, a resident and taxpayer in the City
of Asheville, is seeking to restrain the defendant, City of Asheville,
from contracting any debt, or expending any tax moneys in the op-
eration of a local motor bus transportation system without a vote of
the people.

The findings of fact made by the trial judge are uncontroverted.
The White Bus Transportation Company, which previously operated
the bus system in the City of Asheville, ceased operation as a result
of receivership action. After a study was made of the transportation
problems of the City, various private companies were contacted, but
no company would agree to operate a bus system in the City of
Asheville. On 2 November 1967 the City of Asheville enacted Ord-
inance No. 586, entitled "An Ordinance Establishing Administrative
Body Known as the Asheville Transit Authority", and thereafter,
the City advanced funds to the Transit Authority for the purpose
of enabling it to purchase the assets of the White Transportation
Company, which formerly provided public bus transportation in the
City of Asheville. The Asheville Transit Authority since 2 January
1968, has been operating the public transportation system in the
City of Asheville. The City has agreed to provide the necessary funds
for the operation of said bus system, and to subsidize any losses of
the Asheville Transit Authority for a period of one year, beginning
2 January 1968. The Asheville Transit Authority has stated that it
intends to acquire new buses and equipment which will require the
expenditure of $350,000 or more.

There were certain findings of fact concerning the bus routes, the
number of miles involved, the number of passengers who ride on the
buses, and the population of the City of Asheville. It was also found

that to the extent that expenses for operation and modernization of equipment which were not covered by revenues from the transportation system and the sale of city license tags by the City, the City had expended or expected to expend tax funds and had loaned its credit to assure the continued operation of the City bus system.

It was further found, "That the defendant, the City of Asheville, has not submitted the question of contracting a debt, or pledging the City's faith and credit to ATA for the operation of a public transportation system, to the voters in an election held for such purpose."

After making the above findings of facts, the court entered the following conclusions of law:

"1.   That the defendant, The City of Asheville, is a municipal corporation, having the powers and authority granted to it by its Charter, and that, with respect to expenditure of tax funds, and the lending of its credit, it is subject to the limitations imposed by its Charter, by the General Statutes of North Carolina, and by the Constitution of North Carolina.

2.   That the operation of a public bus or transportation system by The City of Asheville is not a 'necessary expense,' within the meaning of Article VII, of Section 6, of the Constitution of the State of North Carolina, and that therefore, the defendant, The City of Asheville, may not contract any debt, pledge its faith or credit, nor spend any tax levys or collections for the same, unless approved by a majority vote in an election held for that purpose.

3.   That the defendant, The City of Asheville, does not have the authority, under its Charter, or under State law, to expend any tax levys or collections for the operation, expansion, or improvement of a public transportation system."

The court then entered the following judgment:

"1.   That the defendant, The City of Asheville, be restrained, enjoined, and prohibited from contracting any debt, pledging its faith, loaning its credit, or levying or collecting any taxes, or expending any tax money by or through the Asheville Transit Authority, in the operation of a public transportation system, unless and until the same be submitted to and approved by the voters in an election for such purpose, as required by law.

2.   The costs of this action are taxed against the defendant, The City of Asheville."

From the judgment entered, defendant appealed.

*Van Winkle, Buck, Wall, Starnes and Hyde by O. E. Starnes, Jr., for defendant appellant.*

*Carl A. Hyldburg, Jr., and Herbert A. Wallace for plaintiff appellee.*

MORRIS, J.

The validity of the ordinance creating an Asheville Transit Authority is not before us. The only error assigned is the failure of the trial court to find as a fact and conclude as a matter of law that the operation of a public transportation system is a necessary expense as the term is used in Article VII, section 6, of the Constitution of the State of North Carolina.

Article VII, section 6, provides:

> "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose."

We feel compelled to rule that this case if governed by the recent cases of *Horton v. Redevelopment Commission,* 259 N.C. 605, 131 S.E. 2d 464; *Vance County v. Royster,* 271 N.C. 53, 155 S.E. 2d 790; and *Moody v. Transylvania County,* 271 N.C. 384, 156 S.E. 2d 716.

In *Horton* the Supreme Court held that any provisions of the Urban Redevelopment Law which allowed a municipality to sell bonds, appropriate funds, and to levy taxes to carry out its powers and functions under the Urban Redevelopment Law without the approval of a vote of the qualified voters in the municipality, were repugnant to Article VII, section 6, of the North Carolina Constitution. The Court said that where the expense was for the administration of justice, maintenance of the public peace, or partakes of a governmental nature, or if it is an exercise by the municipality of a portion of the State's delegated sovereignty, then the expense is a necessary expense under Article VII, section 6, and there need not be a vote of the people. The Court says that the term "necessary expense" refers to "the ordinary and usual expenditures reasonably required to enable a county to properly perform its duties as part of the State Government". "The cases declaring certain expenses to have been 'necessary' refer to some phase of municipal government. This Court, so far as we are advised, has given no decision to the con-

trary." The Court gives a summary of those expenses classified as "not necessary".

"The following have been held not as 'necessary expenses' within the purview of Article VII, section 7, of the State Constitution: a swimming pool, *Greensboro v. Smith,* 239 N.C. 138, 79 S.E. 2d 486; municipal parks and recreational facilities, *Purser v. Ledbetter,* 227 N.C. 1, 40 S.E. 2d 702, support and maintenance of James Walker Memorial Hospital, *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E. 2d 749; a hospital, *Sessions v. Columbus County,* 214 N.C. 634, 200 S.E. 418; *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668; *Burleson v. Board of Aldermen,* 200 N.C. 30, 156 S.E. 241; *Nash v. Monroe,* 198 N.C. 306, 151 S.E. 634, a public library, *Westbrook v. Southern Pines,* 215 N.C. 20, 1 S.E. 2d 95; *Jamison v. Charlotte,* 239 N.C. 682, 80 S.E. 2d 904; an airport, *Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 803, a chamber of commerce, *Ketchie v. Hedrick, supra;* a drill tower for firemen, *Wilson v. Charlotte,* 206 N.C. 856, 175 S.E. 306."

In *Vance County v. Royster, supra,* the Supreme Court in an opinion by Lake, J., held that the expenditures of tax money, and the contracting of a debt by a county for the purposes of maintaining a county airport was not a "necessary expense" although it was for a public purpose. There the Court said:

"This provision of our State Constitution, like the provision of Article V, § 4, imposing a limitation upon the power of the State, counties and municipalities to contract debts without a vote of the people, does not deprive the county of any power to contract a debt. It merely declares who shall have the power of decision. The Constitution gives to the people that power by requiring their duly elected representatives to submit the question to them for their approval before the indebtedness is assumed. . . .

\*          \*          \*

It is not for the court to determine the wisdom of a decision to contract a debt for a county or a city, but it is the duty of the court to determine whether the proposed indebtedness is for a 'necessary expense' within the meaning of the above provision of the Constitution. *Sing v. Charlotte,* 213 N.C. 60, 195 S.E. 271; *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668, 113 A.L.R. 1195; *Starmount Co. v. Hamilton Lakes,* 205 N.C. 514, 171 S.E. 909; *Storm v. Wrightsville Beach,* 189 N.C. 679, 128 S.E. 17."

In *Moody v. Transylvania County, supra,* the Supreme Court was faced with the question of whether an ambulance service was a necessary expense for which a county could legally contract. The Court held that this was not a necessary expense. The following is quoted from *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668:

> "In defining 'necessary expense' it is said in *Henderson v. Wilmington, supra* (191 N.C. 269, 132 S.E. 25), 'We derive practically no aid from the cases decided in other states. . . . We must rely upon our own decisions.' Then, after reviewing numerous cases dealing with the subject of 'necessary expense,' page 278, *Adams, J.,* said: 'The cases declaring certain expenses to be necessary refer to some phase of municipal government. This Court, so far as we are advised, has given no decision to the contrary.' Then, on page 279, continues: 'The decisions heretofore rendered by the Court make the test of a "necessary expense" the purpose for which the expense is to be incurred. If the purpose is the maintenance of the public peace or the administration of justice; if it partakes of a governmental nature or purports to be an exercise by the city of a portion of the State's delegated sovereignty; if in brief, it involves a necessary governmental expense.'
>
> This Court has repeatedly held that the building, maintenance, and operation of public hospitals is not a 'necessary expense.' "

In the present case the following finding of fact, supported by competent evidence, was not excepted to by the City of Asheville:

> "To the extent that the expenses of operating the public transportation system by ATA, including modernization of equipment, and extension of the routes, is not met by revenues from the public transportation system, plus the revenue received by the City of Asheville from the sale of City license tags, under Ordinance 584, the defendant, The City of Asheville, has expended tax funds, or expects to expend tax funds, for said public transportation system, and expects to lend its credit or other financial support to insure the continued operation of the public transportation system established by ATA."

The expense of operating the City bus system by the City of Asheville is not a "necessary expense" within the meaning of Article VII, section 6, of the Constitution of North Carolina. Therefore, the City may not pledge its credit nor expend tax revenues to support

the operation of a bus system without first obtaining approval by submitting the matter to a vote of the people.

The judgment of the trial court is

Affirmed.

MALLARD, C.J., and BROCK, J., concur.